[848 NYS2d 165]

In the Matter of Thomas J. Culhane (Admitted as Thomas Joseph Culhane), a Disbarred Attorney, Petitioner, Departmental Disciplinary Committee for the First Judicial Department, Respondent.

First Department, December 27, 2007

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for respondent.

*Stillman, Friedman & Shechtman, P.C. (John B. Harris* of counsel), for petitioner.

## OPINION OF THE COURT

Per Curiam.

Petitioner Thomas J. Culhane was admitted to the practice of law in the State of New York by the First Judicial Department on June 29, 1954. On June 9, 1998, petitioner pleaded guilty in the United States District Court for the Eastern District of New York to a one count information alleging conspiracy to commit mail fraud in violation of 18 USC §§ 371 and 1341 *et seq.* Petitioner admitted that he had conspired with others to pay cash bribes through middlemen to insurance company employees in exchange for favorable handling of settlements of personal injury claims and lawsuits. In September 1998 he was sentenced to six months' home confinement, four years' probation, and community service, and was fined $100,000. By order entered September 29, 1998, this Court accepted petitioner's resignation from the practice of law and struck his name from the roll of attorneys, effective immediately (*Matter of Culhane*, 247 AD2d 88 [1998]).

When petitioner sought reinstatement to the practice of law in August 2006, this Court referred his application to the Departmental Disciplinary Committee for a hearing to determine whether he possessed the requisite character and fitness to be reinstated pursuant to 22 NYCRR 603.14. After a hearing, the Hearing Panel concluded that petitioner had met his burden of establishing by clear and convincing evidence that he possessed the necessary character and fitness to warrant reinstatement. Petitioner now moves for an order confirming the findings, conclusions and recommendation of the Hearing Panel, and reinstating him as an attorney. We grant the petition.

We recognize the serious nature of the misconduct petitioner engaged in over a 13-year period: on approximately 15 to 20 occasions he paid bribes to middlemen who in turn paid corrupt insurance company adjusters in order to expedite their handling of his clients' personal injury matters under review by the insurance companies. His conduct, and that of the others involved in this web of malfeasance, was indefensible in a member of the bar.

Yet, on an application for reinstatement, while it is appropriate to consider the misconduct for which the petitioner was disbarred (22 NYCRR 603.14 [c]), the ultimate question is

whether he has established that he now possesses the requisite character and fitness to practice law (22 NYCRR 603.14 [b] [2]; [g]). Importantly, the Hearing Panel found that petitioner expressed genuine shame and remorse, was contrite, and accepted responsibility for his misconduct. It particularly observed that his demeanor itself "belied any attempt to evade responsibility for his earlier misconduct," and that his remorse was "palpable." It noted his assertion that this was the worst thing he had ever done. From the foregoing, it concluded that despite the extended period of time in which petitioner participated in the conspiracy, his misconduct was aberrational; we understand the use of this term in this context to mean that he was law-abiding in all other aspects of his life and his law practice, and that the Panel concluded that petitioner will not engage in misconduct of this or any other sort in the future.

The Committee, and our dissenting colleague, emphasize petitioner's failure to affirmatively acknowledge that the insurance companies were victimized by the conspiracy of which he was a part. The Hearing Panel was less troubled by that failure, explaining that the reason petitioner saw no appreciable harm to the insurance companies was because he felt that the bribes he paid merely speeded up the time in which the insurance company made the payment, but did not change the amount the companies would ultimately pay in any event. The Panel also pointed out that in pleading guilty to the information, petitioner necessarily agreed the insurance companies were victimized as a result of his actions. Moreover, as the Hearing Panel pointed out, in an affidavit and in the 1998 court proceedings, petitioner stated "I readily acknowledge that my payments were wrong and illegal, that I was acting in the corruption of the insurance carriers, who were plainly entitled to delay settlement payments if they acted in their employer's best interests."

With those points in mind, we agree with the Hearing Panel that petitioner's failure at the hearing to fully acknowledge the nature of the harm done by his crime does not preclude his reinstatement.

The Hearing Panel also relied upon an "impressive" collection of character letters, which the Committee had agreed could be considered as evidence without the witnesses' personal appearance, notwithstanding petitioner's offer to have his character witnesses appear in person. The Panel observed that "the letters speak of a man dedicated to his family, his friends, his church and his community, as well as kindness and assistance to others above and beyond the ordinary."

Finally, we are mindful that petitioner has stated in his testimony that he has no intention of recommencing the practice of law, and simply wants to regain some measure of dignity, and conclude that this fact militates in favor of rather than against his reinstatement.

Accordingly, petitioner's motion should be granted, the report confirmed and petitioner reinstated to the practice of law.

McGUIRE, J. (dissenting). Petitioner was admitted to practice as an attorney in the State of New York by this Court on June 29, 1954. By an order dated September 29, 1998, this Court accepted petitioner's resignation and ordered that his name be struck from the roll of attorneys, i.e., petitioner was disbarred (247 AD2d 88 [1998]). Petitioner's disbarment was precipitated by his conviction, upon his guilty plea, in the United States District Court for the Eastern District of New York for conspiracy to commit mail fraud, a federal felony, in violation of 18 USC §§ 371 and 1341 *et seq.* Petitioner admitted that he conspired with others to pay cash bribes through middlemen to insurance company employees in exchange for favorable consideration in connection with the settlement of personal injury claims and lawsuits. Petitioner so conspired on approximately 15 to 20 occasions over a 13-year period.

Petitioner now seeks to be reinstated (Judiciary Law § 90 [5] [b]; 22 NYCRR 603.14). In order to be reinstated, petitioner must establish by clear and convincing evidence, among other things, that he "possesses the requisite character and general fitness to practice law" (22 NYCRR 603.14 [b] [2]). In evaluating the petition, "[we] may consider the misconduct for which petitioner was originally disbarred . . . and any other relevant conduct" of petitioner (22 NYCRR 603.14 [c]).

Petitioner should not be reinstated. Petitioner pleaded guilty to a serious federal felony conspiracy charge stemming from his repeated bribing of insurance company adjusters who expedited the settlement of cases petitioner had pending with insurance companies. These bribes were paid, through middlemen, on approximately 15 to 20 occasions over a period of 13 years, demonstrating a pattern of criminal conduct and belying any claim that petitioner's conduct was aberrational.

Of paramount importance, however, is petitioner's insistence that there were no victims as a result of his criminal conduct. On the issue of whether petitioner accepted responsibility for his criminal and professional misconduct, the Hearing Panel found that petitioner was "confused" and "did not have an ade-

quate opportunity to address the questions posed by his counsel and Staff" on the subject. The Panel's finding is not defensible. Petitioner was asked during his reinstatement hearing whether he believed anyone or anything had been harmed by his criminal conduct and petitioner answered in the negative. Notably, the following colloquy occurred during the Departmental Disciplinary Committee's cross-examination of petitioner at the reinstatement hearing:

"Q: Do you have an understanding as to whether or not there were any victims or victimized agencies as a result of your criminal conduct?

"A: No, sir.

"Q [The Hearing Panel]: Do you understand the question? Was anybody hurt by what you did?

"A: Was anybody hurt by what I did? No."

Petitioner was then presented with an excerpt from an affidavit he submitted in support of his application for reinstatement. In the affidavit, petitioner averred "[t]hat I was acting in what I perceived to be a manner that benefitted my clients *without an adverse impact on the [insurance] carriers* does not excuse my actions" (emphasis added). The Hearing Panel then asked petitioner, "So it's your testimony . . . that in your mind neither the [insurance] carrier nor your clients were hurt by your conduct?" Petitioner, consistent with his prior answer, replied "I don't believe that the insurance carrier was hurt at all."

As the attorney for the Departmental Disciplinary Committee (the Committee) correctly puts it in his submission to this Court, "the questions posed to petitioner on this topic were as clear as a bell." And in his unequivocal responses, petitioner repeatedly made clear that he does not believe there were any victims of his crimes. As the Committee's attorney goes on to stress, "petitioner either refuses or is incapable of accepting the fact that entities, namely the insurance companies, were victimized as a result of the criminal scheme in which he participated for thirteen years."

Finally, I respectfully disagree with the majority that petitioner's assertion that he has no intention of recommencing the practice of law is a "fact [that] militates in favor of . . . his reinstatement." Of course, however, once reinstated petitioner is free to change his mind. Accordingly, in my opinion, this assertion is irrelevant.

Given that petitioner's serious criminal conduct took place repeatedly over the course of so many years and the persistence

of his position that the insurance companies were not harmed by that conduct, petitioner has failed to establish by clear and convincing evidence that he "possesses the requisite character and general fitness to practice law" (22 NYCRR 603.14 [b] [2]). Accordingly, the petition should be denied.

ANDRIAS, J.P., SAXE, NARDELLI and MALONE, JJ., concur; McGUIRE, J., dissents in a separate opinion.

Petitioner reinstated as an attorney and counselor-at-law in the State of New York, effective the date hereof.